UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD ODEALL ROBERTS
#878021,

       Plaintiff,                                        Hon. Jane M. Beckering

v.                                                  Case No. 1:23-cv-927

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Donald Roberts, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility, filed a complaint against the MDOC and others pursuant to 42 U.S.C. § 1983 based on events that occurred while he was incarcerated at the Bellamy Creek Correctional Facility (IBC) in September 2022. Roberts's only remaining claims in the case are his Eighth Amendment excessive-force claims against Defendants Jeremy Quezada and Ray Rubley and his failure-to-intervene claim against Defendant Derek Serritos.

Presently before me is Defendants' Motion for Summary Judgment (ECF No. 51) and Roberts's Motion for Summary Judgment. (ECF No. 53.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **DENY** both motions.

## I. Background

On September 23, 2022, at around 1:20 p.m., Roberts was returning from the prison yard to Housing Unit 5, where he was housed at IBC. (ECF No. 52-2 at PageID.236, 238–39.) Immediately prior to that time, Corrections Officer (CO) Heilig had been engaged in a physical

altercation with a prisoner. When Roberts entered the unit, he discovered that a fight had occurred. Roberts claims that, as he was standing and looking on, Defendant CO Rubley saw him smile and laugh at something another prisoner had said and asked Roberts, "What's so fucking funny? You won't be laughing if I take you to the hole." (*Id.* at 239.) Roberts responded that nothing was funny and turned around to return to the yard, but he heard someone announce over the PA system that the yard and unit were being closed due to the incident. Roberts then proceeded towards the stairs to return to his cell on the upper level. As he walked towards his cell, he noticed Defendant Rubley following him, saying "Come on, [f]ucking ni**er, . . . you think you bad? I'll fuck you up." (*Id.* at PageID.239–40, 242–43.) As Roberts climbed the stairs, he noticed Rubley still behind him and threw his hands up and turned around to face Rubley. At that point, Rubley yelled to Defendant CO Quezada, who was standing nearby on the stairs, to "[c]uff him up." Roberts held his hands out as Rubley assisted Quezada in applying handcuffs. During this time, Roberts complied with Defendants' commands and did not resist. (*Id.* at PageID.243–44.)

As Rubley and Quezada turned Roberts around to take him down the stairs, they bent him over at the waist and lifted his arms up high, causing him pain.[1] (*Id.* at PageID.246.) Roberts claims that after Rubley, who was holding his right arm, and Quezada, who was holding his left arm, walked him through a door and into a tunnel, they dragged him into a corner, ran his head into a wall, and assaulted him by hitting and punching him in his back and side and kneeing him in his legs. (*Id.* at PageID.247–49.) Defendant Sgt. Serritos, who was standing in the CO booth, directed Rubley and Quezada to continue attacking Roberts, yelling, "Fuck[] him up. Yeah. Fuck that pussy ni**er up." (*Id.* at PageID.248.) During the assault, Roberts was stabbed on his right

---

[1] Roberts testified that there was no issue with the handcuffs being too tight. (ECF No. 52-2 at PageID.247.)

2

side with an object, possibly a key or an ink pen. Roberts believes that Rubley stabbed him because Rubley was holding Roberts on his right side. Roberts estimates that the assault lasted for two-to-three minutes. (*Id.* at PageID.249–51.)

Following the assault, Defendants Rubley and Quezada proceeded to take Roberts to Housing Unit 8. While leaving Unit 5, they ran his head into the door, and as they were going into Unit 8, they ran his shoulder into a gate. (*Id.* at PageID.252.) After entering Unit 8, Defendants Rubley and Quezada assaulted Roberts a second time for about a minute and a half. (*Id.* at PageID.254–55.) After the second assault, Rubley and Quezada left Roberts with another officer, who walked Roberts into a shower cage and told Roberts to remove his clothes to be searched. During the search, the officer noticed that Roberts was bleeding from his stomach area, took pictures of the wound, and contacted healthcare. (*Id.* at PageID.256.)

Katherine West, R.N., saw Roberts at his segregation cell the same day at 1:41 p.m. She noted a 3 cm circular abrasion on the right side of his abdomen without drainage. She instructed him to clean the wound with soap and water and noted that dressing was unnecessary. Nurse West noted that Roberts denied any other injury and that she saw no other obvious injury. (ECF No. 52-8 at PageID.328.) Nurse West saw Plaintiff at his cell about a week later on October 1, 2022. She noted that the wound had deteriorated since she last saw it, with a "white area at the edge of the black scab on the medial superior aspect of the wound." (*Id.* at PageID.329.) Roberts admitted "picking" at the scab and said there was something in the wound that had not been there previously. Nurse West noted there was no indication of infection and no warmth, redness, or drainage. She determined that a bandage was unnecessary and gave him two packs each of acetaminophen and ibuprofen. (*Id.*) Nurse West last saw Roberts regarding the wound on October 5, 2022, and noted that it was "healing well." (*Id.* at PageID.330.)

3

Following the incident, Defendant Rubley issued Roberts a misconduct ticket for threatening behavior, alleging that during the incident involving CO Heilig, Roberts threatened to physically harm another officer in a manner worse than what happened to CO Heilig. (ECF No. 52-6 at PageID.320.) On October 4, 2022, a hearing officer held a hearing on the misconduct, at which Roberts pled not guilty to the charge. After considering the misconduct report, the investigation report, and Roberts's statement, the hearing officer found Roberts guilty of threatening behavior. (*Id.* at PageID.317–18.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When video evidence is presented, witness testimony will not create a genuine issue of material fact if the video is unambiguous and answers the pertinent factual questions. *See Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

### III. Discussion

#### A. Defendants' Motion

Defendants raise the defense of qualified immunity. (ECF No. 52 at PageID.210–211.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

##### 1. Eighth Amendment Violation

As an initial matter, Defendants contend that the Court should give the hearing officer's finding on the misconduct ticket preclusive effect in determining whether summary judgment is warranted. (ECF No. 52 at PageID.214–15.) In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013),

the Sixth Circuit considered whether a hearing officer's factual finding that the plaintiff grabbed the defendant's hand should be given preclusive effect on the plaintiff's Eighth Amendment claim. In resolving the question, the court looked to *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799 (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Peterson*, 714 F.3d at 912-13. After applying the four *Elliott* criteria to the MDOC's major misconduct hearing process, the Sixth Circuit concluded that Michigan courts would grant preclusive effect to the hearing officer's finding. *Peterson*, 714 F.3d at 917.

The Sixth Circuit revisited the issue a year later in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), another case alleging excessive use of force. The court limited its holding in *Peterson*, noting that the question of preclusion had to be decided on a case-by-case basis. The court observed:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved

> categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. *Id.* at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05. The court further found that the record had not been sufficiently developed for it to resolve the preclusion issue on appeal. Consequently, it remanded the case for consideration of the preclusion argument, directing the district court to give particular attention to the fairness and accuracy of the hearing officer's factual findings. *Id.* at 405. The court further identified pertinent inquiries, "including why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either Roberson or Torres." *Id.*

The evidentiary record in this case provides ample support for giving the hearing officer's finding preclusive effect. That is, the hearing officer, Administrative Law Judge (ALJ) Pezon, acted in a judicial capacity. ALJ Pezon conducted a full hearing, at which she considered all of the evidence, including the misconduct report, the hearing investigation report, Roberts's statement, and the misconduct sanction screening form. (ECF No. 52-6 at PageID.317.) In addition, at the hearing, ALJ Pezon asked Roberts whether he had anything to add to his statement. (*Id.* at PageID.318.) Although ALJ Pezon did not review the video of the incident, she explained that because the video contained no audio, it would not assist in determining whether Plaintiff made the alleged statement to Defendant Rubley. (*Id.*) Next, ALJ Pezon resolved the disputed issue of fact before her—whether Roberts made the alleged statement to Rubley—and afforded Roberts an adequate opportunity to present his version of events. After considering the evidence, ALJ Pezon fully explained why she found Rubley's report credible. (*Id.*) Because the first three requirements

7

are satisfied, ALJ Pezon's decision is entitled to preclusive effect because Michigan courts would do so under the present circumstances. *Peterson*, 714 F.3d at 914–17.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate

who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

An Eighth Amendment claim has both an objective and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Id.* at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). The subjective component asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

Defendants contend that Roberts fails to establish both components of his claim. As to the objective component, Defendants argue that the absence of any injury other than a minor abrasion on his abdomen that did not even require a visit to healthcare indicates that any force they used on Roberts was *de minimis* and is thus not actionable. They further note that Roberts's allegation of being assaulted for at least two minutes in Unit 5 and another minute and a half in Unit 8 is at odds with the lack of evidence of bruising or swelling that would logically occur if Roberts was subjected to the claimed assaults. As for the subjective component, Defendants contend that, based on ALJ Pezon's finding that Roberts had made the statement reported by Defendant Rubley, they had the right to use force in placing handcuffs on Roberts and escorting him from Unit 5 to Unit 8.

Given Roberts's threatening statement, there can be no dispute that Defendants Rubley and Quezada were justified in using force to apply handcuffs to Roberts and escort him to Unit 8. But, as noted above, Roberts testified that he was compliant with their orders and did not resist at all. Roberts claims Rubley and Quezada assaulted him twice while taking him to Unit 8 by hitting and

9

punching him in his back and side, kneeing him in his legs, and stabbing him with an object in his abdomen, as well as running his head into a wall and his shoulder into a gate. Defendants Quezada and Rubley deny that they did any of this and claim that they only used the amount of force necessary to transport Roberts to Unit 8. (ECF Nos. 52-3 and 52-4.) Defendant Serritos states that he did not see Quezada or Rubley do these things, nor did he encourage them to use force against Roberts. (ECF No. 52-5.) No Defendant claims that Roberts was noncompliant or resisted efforts to move him to Unit 8. Furthermore, there is no video evidence that either confirms or refutes the parties' respective versions of events.

As noted above, the lack of serious injury is not dispositive in an excessive force claim under the Eighth Amendment. *Wilkins*, 559 U.S. at 37. When prison officials maliciously and sadistically use force to cause harm, contemporaneous standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. Moreover, the Sixth Circuit has observed that "[u]nder the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible." *Coley v. Lucas Cnty.*, 799 F.3d 530, 540 (6th Cir. 2015) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). Given Roberts's testimony that Defendants Quezada assaulted him in spite of his compliance, a reasonably jury accepting his testimony could conclude that they violated the Eighth Amendment by applying excessive force sadistically and maliciously and that Defendant Serritos failed to intervene to prevent the violative conduct. Thus, a genuine dispute of material fact precludes summary judgment.

### 2. Clearly Established

Given the disputed factual issues, Defendants' motion also fails on the clearly established prong. As noted, the Sixth Circuit has held that use of force amounting to an assault on a restrained

and nonresisting prisoner violates the Eighth Amendment. *Coley*, 799 F.3d at 540. Moreover, at a minimum, the Sixth Circuit's decision in *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014), which involved the use of force on a handcuffed and controlled prisoner, would have given Defendants fair notice that their conduct, as alleged by Roberts, violated the Eighth Amendment. Thus, Defendants are not entitled to qualified immunity.

      **B.**      **Roberts's Motion for Summary Judgment**

As noted, Roberts has also filed a motion for summary judgment, although it is questionable whether he intends it as a true motion for summary judgment. He fails to support his motion with evidence, and concludes by requesting that the Court not dismiss his claims and allow the case to proceed to trial. (ECF No. 53 at PageID.335.) In any event, I decline to consider the motion because it was not timely filed. Pursuant to the January 16, 2024 Standard Case Management Order in a Prisoner Civil Rights Case (ECF No. 26), motions for summary judgment were due no later than June 12, 2024. Although Roberts did not sign and date his motion, the postmark shows that it was mailed on June 25, 2024—almost two weeks after the filing deadline— and was not filed with the Cout until June 27, 2024. Roberts's motion was untimely even with the benefit of the mailbox rule. Accordingly, I decline to consider it. *See Gora v. Gelabert*, No. 1:08-CV-992, 2009 WL3233849, at *9 (W.D. Mich. Sept. 30, 2009) ("Pro se litigants are required to follow the rules of civil procedure and easily-understood Court deadlines."); *In re Sharwell*, No. 97-3320, 1997 WL 681509, at *1 (6th Cir. 1997) (pro se status does not exempt litigant from compliance with procedural rules); *Johnson v. Jondreau*, No. 2:13-CV-260, 2014 WL 4100939, at *1 (W.D. Mich. Aug. 18, 2014) (same).

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **deny** both motions for summary judgment (ECF Nos. 51 and 53) and allow Roberts's remaining claims to proceed.

Dated: October 15, 2024                                         /s/ Sally J. Berens
                                                                                SALLY J. BERENS
                                                                                U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).